WATKINS, Judge.
This is an action brought by Mrs. Carol Stone Brundage (the mineral lessor) against Bean Energy, Inc. (the mineral lessee) to obtain cancellation of a mineral lease dated June 4, 1984, that Mrs. Brund-age contends has expired for failure to pay delay rentals or commence drilling operations on or before June 4, 1985. Bean contends it obtained production from reworking an old well at an expense of some $90,000.00 shortly before the primary term of the lease expired.
Two clauses of the mineral lease are pertinent, clauses 1 and 6, which to some degree are in conflict. The mineral lease is printed on a standard Bath-O-Gram Louisiana Revised Six (6) 76K — Pooling Form.
Both Bean and Mrs. Brundage moved for summary judgment on the basis of numerous depositions and affidavits, which generally indicate that production was obtained during the primary term of the lease, but through reworking an existing well, not by drilling a new well. The trial court rendered summary judgment in favor of Mrs. Brundage, without favoring us with reasons.
Clauses 1 and 6 of the lease, which appear to some extent to be in conflict, giving rise to ambiguity, read as follows:
1. This lease shall terminate on June 4, 1985, unless on or before said date the Lessee either (1) commences operations for the drilling of a well on the land, or on acreage pooled therewith (or with any part thereof) in search of oil, gas or other minerals and thereafter continues such operations and drilling to completion or abandonment; or (2) pays to the Lessor a rental of FIFTY DOLLARS AND NQ/100 Dollars ($50.00) per acre for all or that part of the land which Lessee elects to continue to hold hereunder, which payment shall maintain Lessee’s rights in effect as to such land without drilling operations for one year from the date last above mentioned; and Lessee may continue to maintain the rights granted without drilling operations for successive twelve months periods (during the primary term) by paying Lessor, on or before the beginning of such respective periods FIFTY DOLLARS AND NQ/100 Dollars ($50.00) per acre for all or that part of the land held hereunder. Payments may be made to the Lessor or may be mailed or delivered for deposit to Lessor’s credit in the First National Bank Bank [sic] of Rock Island, Illinois, which Bank or its successor shall continue to be the depository for such rentals as the representative of Lessor and Lessor’s successors and assigns; and the death or incapacity of Lessor shall not terminate or affect Lessee’s right to continue to deposit all payments in said depository Bank or its successor. The mailing of the check or draft of Lessee or Lessee’s successors to Lessor *114 at the address set forth above or to the said Bank on or before the rental paying date shall be considered as payment of rental and operate to maintain Lessee’s rights in force and effect. Should said Bank fail or liquidate, or if it should for any reason fail or refuse to accept Lessee’s check or draft, the attempted payment in the manner above provided shall not be thereby rendered ineffective and Lessee shall not be in default for failure to pay said rental until thirty (30) days after Lessor shall have furnished Lessee with a recordable instrument naming a new depository; and this provision shall apply to all such new and subsequently named depositories. Wherever used in this lease, “operations for drilling”, “drilling operations” and “operations” shall be deemed to have been commenced when work is commenced or materials placed on the ground at or near the well site preparatory to the drilling of a well.
[[Image here]]
6. After the production of oil, gas or any other minerals in paying quantities, either on the leased premises or on lands pooled therewith (or with any part thereof), the rights granted shall be maintained in effect during and after the primary term and without the payment of the rentals hereinabove provided for so long as oil, gas, or some other mineral is being produced in paying quantities. It is provided, however, that if, after the production of oil, gas or other minerals in paying quantities, the production thereof should cease from any cause, and Lessee is not then engaged in drilling or reworking operations, this lease shall terminate unless Lessee resumes or restores such production, or commences additional drilling, reworking or mining operations within ninety (90) days thereafter and continues such operations without the lapse of more than ninety (90) days between abandonment of work on one well and commencement of reworking operations or operations for the drilling of another, in an effort to restore production of oil, gas or other minerals, or (if during the primary term) commences or resumes the payment of rentals in the manner hereinabove provided for in connection with the abandonment of wells drilled. Lessee shall not be required to produce more than one mineral, the production of any one mineral in paying quantities and with reasonable diligence being sufficient to maintain all of lessee’s rights. In the event that any well on the land or on property pooled therewith (or with any part thereof), is capable of producing gas or gaseous substances in paying quantities but such minerals are not being produced, then Lessee’s rights may be maintained, in the absence of production or drilling operations, by commencing or resuming rental payments as hereinabove provided for in connection with the abandonment of wells drilled. Should such conditions occur or exist at the end of or after the primary term, or within ninety (90) days prior to the expiration thereof, Lessee’s rights may be extended beyond and after the primary term by the commencement, resumption or continuance of such payments at the rate and in the manner herein provided for rental payments during the primary term, and for the purpose of computing and making such payments the expiration date of the primary term and each anniversary date thereof shall be considered as a fixed rental paying date; provided, however, that in no event shall Lessee’s rights be so extended by rental payments and without drilling operations or production of oil, gas or some other mineral for more than five consecutive years.
Thus, Clause 1 seems to indicate that the term of the lease may be extended, apart from delay rental, by drilling a well, while Clause 6 seems to indicate that the term of the lease may be extended by production in paying quantities, regardless of whether a well is drilled. The precise question of the interworking of Clauses 1 and 6 has never been decided in Louisiana, as far as our research shows.
We hold that because of the ambiguity of the lease form, a trial on the merits is needed, and the matter is not ripe *115 for summary judgment in favor of either party.
LSA-C.C. art. 2053 reads as follows:
A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties.
Counsel for Mrs. Brundage contends that the ambiguity should be resolved against Bean as the contract was a standard form contract, the text of which was furnished by Bean.
LSA-C.C. art. 2056 read as follows:
In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text.
A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party.
As a standard form contract is to be interpreted against the party who prepared the text only “[i]n case of doubt that cannot be otherwise resolved, ...” and as no evidence has been taken as permitted by LSA-C.C. art. 2053 as to “usages, [and] the conduct of the parties before and after the formation of the contract ...” it appears that evidence of such a nature should be adduced, and that the mineral lease should not be interpreted without some evidentia-ry guide, if any there be, as to its interpretation, furnished by trial on the merits.
We reverse the judgment of the trial court, denying both motions for summary judgment, and remand the matter for further proceedings, all costs to await final determination of this matter.
REVERSED AND REMANDED.